UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANIEL CALDERON, JR.,

    Plaintiff,

v.                                                Case No: 6:12-cv-426-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION[1]

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Act.

I have reviewed the record, including the relevant administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the pleadings and memoranda submitted by the parties. For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### I. Background

A. Procedural History

Plaintiff filed for DIB benefits on April 13, 2010. (Tr. 21; Doc. 16; Doc. 17). He claims disability beginning on September 15, 2009 due to manic depression, anxiety,

---

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

violent thoughts, migraines, tinnitus, and suicidal ideation. (Tr. 157). He was 48 years old on his alleged disability onset date. (Tr. 29). His application was denied initially and on reconsideration. (Tr. 21, 76, 87). On February 10, 2011, at Plaintiff's request, a hearing was held before the ALJ who issued a decision on March 11, 2011, finding Plaintiff was not disabled. (Tr. 21-31, 37-73). On January 20, 2012, the Appeals Council denied Plaintiff's timely request for review. (Tr. 1-5). He has exhausted his administrative remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

B. Relevant Medical Records

1. VA Medical Center – Mental Health History

On March 5, 2010, Plaintiff saw VA Nurse Practitioner Latha Babuji ("Nurse Babuji") to whom he complained of feeling depressed and anxious "for all his life" and having a violent temper in the 1990s. (Tr. 295). Nurse Babuji noted that Plaintiff was no longer physically violent. (Id.). She also noted that he was cooperative and displayed good judgment and insight. (Tr. 296-97). Nurse Babuji diagnosed Plaintiff with depression and assessed his GAF at 65[2] (Tr. 297).

On March 26, 2010, Plaintiff saw psychologist Marguerite Dean, and complained of "mood swings, longstanding problem with anger and difficulty sleeping." (Doc. 290). Dr. Dean opined that Plaintiff's troubled financial situation was a "major source of anxiety." (Id.). Dr. Dean took note of Nurse Babuji's observations from Plaintiff's previous visit to the VA. (Id.). Dr. Dean observed that Plaintiff's polysubstance abuse was in sustained

---

[2] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed.1994) ("DSM-IV"). A GAF between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

remission. (Tr. 291). She also observed that Plaintiff was cooperative and spoke with a normal rate, volume, and tone. (Tr. 292). She found Plaintiff's thought process logical and said his insight, judgment, and impulse control appeared intact, although his mood was mildly dysphoric. (Id.). Dr. Dean diagnosed Plaintiff with a mood disorder (not otherwise specified) and personality disorder (not otherwise specified) with antisocial traits, and ruled out bipolar disorder. (Id.). She assessed his current GAF at 55[3] and prescribed Citalopram, Hydroxyzine, and Depakote. (Tr. 293).

On April 19, 2010, psychiatrist Sonia Rodriguez evaluated Plaintiff and found that he had been compliant with his medication regimen. (Tr. 375). Dr. Rodriguez observed that Plaintiff was cooperative and had fair insight and judgment, yet was irritable. (Tr. 375-76). Dr. Rodriguez diagnosed Plaintiff with a mood disorder (not otherwise specified), polysubstance abuse in sustained remission and an impersonality disorder with antisocial traits. (Tr. 377). She assessed his GAF score at 50.[4] (Tr. 377). He was continued on Amitriptyline,[5] Citalopram,[6] and Divalproex.[7] (Id.).

On August 24, 2010, Plaintiff saw Nurse Babuji again and told her he had experienced feelings of sadness, hopelessness, anxiety, depression, insomnia, and anger. (Tr. 408). He reported that he had recently destroyed his wife's computer and that he had "put [his] ex-wife's head to a wall," although he did not elaborate on how recently

---

[3] A GAF between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV*, 34.

[4] A GAF between 41 and 50 "is characterized by serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *DSM-IV* at 32.

[5] Amitriptyline, generic for Elavil, is an antidepressant. RxList, http://www.rxlist.com/elavil-drug.htm, RxList, Inc., 2012.

[6] Citalopram, generic for Celexa, is an antidepressant. RxList, http://www.rxlist.com/celexa-drug.htm, RxList, 2012.

[7] Divalproex, generic for Depakote, is indicated for management of manic phases of Bipolar Disorder. RxList, http://www.rxlist.com/depakote-er-drug.htm, RxList, 2012.

he had done that.  (Id.).  Nurse Babuji observed that although Plaintiff was irritable and angry, he was cooperative and spoke with a normal rate, volume, and tone.  (Id.).  She also noted that his thought process, impulse control, insight, and judgment seemed intact and that his concentration and attention appeared to be fair.  (Id.).  Nurse Babuji diagnosed Plaintiff with intermittent explosive disorder, polysubstance abuse in remission, alcohol abuse, antisocial personality disorder, and adjustment reaction with mixed emotion.  (Tr. 406, 409).  She indicated that Plaintiff had agreed to the prescribed treatment plan.  (Tr. 409).  She assessed his GAF score at 55. (Tr. 409).

On October 7, 2010, Nurse Babuji evaluated Plaintiff again and completed a Psychiatric/Psychological Impairment Questionnaire.  (Tr. 429-436).  She affirmed her previous diagnoses and assessed his GAF score at 50. (Tr. 429).  She found that he had poor memory, sleep disturbance, mood disturbance, emotional lability, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, generalized persistent anxiety, hostility and irritability, and constant anger issues.  (Tr. 430).  She noted that he was "markedly limited" in nineteen of twenty areas of mental functioning.  (Tr. 431-434).  Nurse Babuji opined that Plaintiff was incapable of even low stress, intolerant of people, and did not follow directions.  (Tr. 435).

Plaintiff saw Nurse Babuji again on November 4, 2010, at which time he said he felt depressed and hopeless.  (Tr. 471).  Nevertheless, he reported being compliant with treatment and Nurse Babuji observed that he was cooperative during his appointment. (Id.).  Again, she noted that his impulse control, insight, judgment, and thought processes were intact.  (Id.).  Once again, she assessed his GAF score at 55 and diagnosed him as having intermittent explosive disorder, polysubstance abuse in remission, and adjustment reaction with mixed emotion.  (Tr. 472).

On November 4, 2010, Plaintiff was also evaluated by Jeremy Goldberg, a mental health social worker. (Tr. 473). Mr. Goldberg observed that although Plaintiff's mood appeared to be depressed, he was friendly and cooperative. (Id.). Mr. Goldberg noted that Plaintiff's insight, judgment, and impulse control were "adequate." (Id.). He also noted that Plaintiff was compliant with his medication regimen. (Id.). Mr. Goldberg said Plaintiff suffered from adjustment disorder and antisocial personality disorder, although it is not clear whether Mr. Goldberg actual diagnosed Plaintiff (and on what authority) or whether he simply restated Nurse Babuji's prior diagnosis. (Tr. 474).

### 2. Dr. Grant – State Agency Consultative Internist

On June 8, 2010, Plaintiff was examined by Dr. Carol Grant, a state agency consultative internist. (Tr. 327-29). Plaintiff complained of depression, anxiety, migraine headaches, and tinnitus. (Tr. 327). Dr. Grant noted that Plaintiff "has been compliant with medication therapy." (Id.). Plaintiff's examination was unremarkable and Dr. Grant did not make any findings with regards to Plaintiff's mental health. (Tr. 327-29). She did, however, diagnose Plaintiff with depression, anxiety disorder, migraine and history of tinnitus. (Tr. 329).

### 3. Dr. Green – Non-Examining State Agency Review Psychologist

On October 25, 2010, Pamela D. Green, Ph.D, a state agency psychologist, reviewed Plaintiff's medical record and completed a mental residual functional capacity assessment of him. (Tr. 451-53). She did not examine Plaintiff. From her review of his medical record, she opined that Plaintiff would be able to understand and remember simple instructions, but that he was moderately limited in his ability to understand and remember detailed instructions. (Tr. 451, 453). She determined that he would be able to complete simple tasks/work procedures and be able to make work decisions, but would be moderately limited in his ability to maintain attention and concentration for extended

periods or to complete a normal workday and workweek without interruptions from psychology based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 451-53). Nevertheless, she determined that Plaintiff was "mentally capable of independently performing basic, routine tasks on a sustained basis." (Tr. 453). Dr. Green also opined that Plaintiff was able to cooperate and be socially appropriate, but that he had moderate difficulty in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his September 15, 2009 alleged onset date. (Tr. 23). At step two, the ALJ found Plaintiff suffered from the following severe impairments: intermittent explosive disorder, tinnitus, and left shoulder pain. (Id.). At step three, the ALJ decided that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Id. at 23-25). The ALJ also determined Plaintiff's residual functional capacity ("RFC"). (Id. at 25-29). At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Id. at 29). Finally, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Id. at 30). Accordingly, the ALJ held that Plaintiff had not been under a disability within the meaning of the Act from the September 15, 2009 alleged onset date through March 11, 2011, the date of the ALJ's decision. (Id. at 30-31).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a

whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

### A. Plaintiff's Right to Appear By Telephone at ALJ Hearing

Plaintiff argues that the ALJ violated his due process rights by denying his request to appear by telephone at the February 10, 2011 hearing. (Doc. 16 at 10-12). The Commissioner argues that Plaintiff has failed to establish that disability claimants have the right to appear telephonically at administrative hearings. (Doc. 17 at 4-9).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation omitted). According to federal regulations, a disability claimant may testify in one of two ways: in person or, if certain criteria are met, by video teleconferencing. See 20 C.F.R. § 404.936; see also 20 C.F.R. § 404.950 ("Any party to a hearing has a right to appear before the [ALJ], either in person or, when the conditions in § 404.936(c) exist, by video teleconferencing, to present evidence and to state his or her position.").

Ordinarily, a claimant is expected to appear in person. However, the ALJ may allow a claimant to appear by *video* teleconferencing if: (1) "video teleconferencing technology is available to conduct the appearance," (2) the "use of video teleconferencing to conduct the appearance would be more efficient than conducting the appearance in person," and (3) "the [ALJ] determines that there is no circumstance in the particular case that prevents the use of video teleconferencing to conduct the appearance." 20 C.F.R. § 404.936(c). As Plaintiff concedes (Doc. 16 at 10) ("[T]he Commissioner's rules and

regulations do not expressly recognize a right of a claimant to testify by telephone[.]"), the federal regulations do not afford a disability claimant the right to appear at a hearing by telephone.

Plaintiff cites to <u>Vicari v. Astrue</u>, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *5 (E.D.N.Y. Feb. 10, 2009), for the proposition that "[a]though the Commissioner's rules and regulations do not expressly recognize a right of a claimant to testify by telephone, **at least one court has recognized such a right** and remanded the matter directing that the claimant's testimony be taken telephonically." (Doc. 16 at 10) (emphasis added). This assessment of <u>Vicari</u> is incorrect and Plaintiff's reliance on the case is misplaced.

In <u>Vicari</u>, the court did not recognize any right of a claimant to testify by telephone; rather the court expressly rejected the idea that such a right exists and acknowledged the Commissioner's discretion to grant or deny Plaintiff's requested accommodation. <u>Vicari</u>, 2009 WL 331242, at *5. The Court found:

> Plaintiff argues that the Commissioner has acted in bad faith by twice denying him his "right to testify by telephone." The Court appreciates [Plaintiff's] frustration at the difficulties he has encountered in prosecuting his claim. **However, he cites no authority for the right he asserts, and the Court has found none. "To the contrary, the regulations make clear that a claimant may appear at the hearing in two ways: in person or by video teleconferencing."** Still, the accommodation plaintiff requests is not unprecedented . . . **On remand, the parties shall seek to effect plaintiff's appearance in the manner prescribed by the regulations.** However, given the prolixity of these proceedings and the manifest legal errors committed below, if [Plaintiff's] current condition prevents his physical appearance at any hearing, the Commissioner may elect, at his sole cost and expense, to arrange for plaintiff's appearance by video teleconferencing. Failing that, the ALJ is directed to take [Plaintiff's] testimony telephonically and accord it the same weight it would have been accorded if given in person.

<u>Id.</u> (internal citations omitted) (emphasis added) (citing <u>Davidson v. Astrue</u>, No. 08-cv-209, 2008 WL 4865584, at *10 (W.D. Wis. Nov. 6, 2008)); <u>see</u> <u>Walker v. Astrue</u>, No. 06-

- 9 -

cv-05978 (NGG), 2009 WL 2252737, at *19 (E.D.N.Y. July 28, 2009) ("Walker contends that the ALJ committed reversible error by failing to provide her the opportunity to testify by telephone at the April 15, 2004 hearing . . . The Regulations do not, however, provide the claimant the use of a telephone to testify before an ALJ.").

Here, the ALJ denied Plaintiff's request to appear telephonically primarily because the record demonstrates that he (1) does not "explode" or have uncontrollable violent outbursts during his medical appointments, (2) has a logical thought process, good judgment, and good impulse control, and (3) can "maintain a marriage." (Tr. 39-41). The ALJ reviewed Plaintiff's medical records and concluded that although he "may have some anger problems" he "was violent in the nineties, [and is] not physical anymore." (Tr. 39). Plaintiff's wife testified that he had recently become angry and threw her computer against the wall, but there is nothing in the record to suggest that this is more than an isolated event or that this incident was indicative of Plaintiff's inability to control his anger.[8]

The ALJ found that throughout the record, Plaintiff is regard by medical professionals as cooperative and is noted as having good judgment and good impulse control. (Tr. 26-27, 29, 40); see (Tr. 292, 296-97,375-76, 408, 471, 473). The ALJ also pointed out that the record reveals the last time Plaintiff was arrested for a violent outburst was more than fifteen years ago, in 1995. (Tr. 29, 39); see (Tr. 290). This record evidence undermines Plaintiff's alleged apprehension over being arrested for exhibiting uncontrollable anger at the hearing. In light of the record, the ALJ's decision to deny Plaintiff's request was reasonable and based on substantial evidence. See Davidson, 2008 WL 4865584, at *10 (The court denied plaintiff's request to appear at the

---

[8] At the hearing, Plaintiff's wife also testified that he became upset and violent on a job site at some unspecified time in the past, but later admitted that she was not present and had no direct knowledge of the event. (Tr. 44).

hearing by telephone because the record showed that plaintiff had no trouble attending her medical appointments.). Therefore, I respectfully recommend the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

### B. The ALJ's Failure to Properly Weigh Medical Records from Nurse Babuji and Dr. Green.

#### 1. Nurse Babuji

Plaintiff argues that the ALJ erred by failing to give any weight to Nurse Babuji's assessment of the impact of Plaintiff's intermittent explosive disorder on his ability to function. (Doc. 16 at 12-13). The Commissioner maintains that the ALJ properly considered Nurse Babuji's findings and rejected them after a consideration of the record as a whole. (Doc. 17 at 9-10).

The federal regulations differentiate between "acceptable medical sources" and "other sources." Acceptable medical sources are those sources that can provide evidence to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). These sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). In addition to evidence from acceptable medical sources, the ALJ may consider evidence from "other sources" to show the severity of a claimant's impairment and functional limitations. 20 C.F.R. § 404.1513(d).

"A nurse practitioner is an 'other source' for the purposes of medical testimony, and as such, [her] opinion cannot be used to establish a medical impairment. An ALJ can give less weight to an 'other source' medical opinion by providing reasons germane to each witness for doing so." Rusten v. Comm'r of SSA, 468 F. App'x 717, 720 (9th Cir. 2012) (internal quotations and citations omitted); see also 20 C.F.R. § 404.1513(d)(1). The opinion of a nurse practitioner is not a "medical opinion" or a treating source and is

- 11 -

not entitled to controlling weight or significance. See SSR 06-03p, 2006 WL 2329939, at *2. Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." Turner v. Astrue, Civil Action No. 07-00194-CB-B, 2008 WL 4489933, at *14 (Sept. 30, 2008) (quoting SSR 06-03p, 2006 WL 2329939, at *6).

Nurse Babuji examined Plaintiff at the VA on multiple occasions between March 2010 and November 2010. (Tr. 348-402). Plaintiff concedes that Nurse Babuji is a nurse practitioner and thus not an acceptable medical source under the federal regulations. (Doc. 16 at 12). Nevertheless, the ALJ considered Nurse Babuji's treatment notes in the following manner:

> On August 24, 2010, Latha Babuli, A.R.N.P., the claimant's primary mental health provider at the V A, diagnosed the claimant with intermittent explosive disorder, adjustment reaction with mixed motion, and antisocial personality disorder, and noted the expected length of treatment to be 6 to 12 months. Even though the claimant presented with anger and irritable mood, his judgment for social conventions and impulse control were intact. His thought process was logical, relevant, and goal directed. The claimant was referred for anger management therapy, but the claimant refused such therapy (Exhibit 7F). On September 21,2010, the claimant reported his anxiety was better with medication (Exhibit 16F). Exhibits IF, 6F, 7F, and 16F support that while claimant may have problems with anger and frustration, he does not harm himself or any third parties; judgment, impulse control and though processes are all intact and normal; he is cooperative; memory and attention are normal; insight is fair; and, his symptoms had improved with medication.
>
> . . . .
>
> As for the opinion evidence, little weight is given to the opinion of Latha Babuli, A.R.N.P., who on October 7, 2010, opined that the claimant was markedly limited in understanding and memory, sustained concentration and persistence, social interactions, and adaptation, and that the claimant's psychiatric condition exacerbated physical symptoms (Exhibit 18F). While Andrew Kleiman, M.D., signed and therefore

- 12 -

> ratified this opinion on January 19,2011, the opinion was prepared by Latha Babuli, an A.R.N.P. While entitled to some consideration and weight, the disability opinion of an A.R.N.P., who is not a doctor of medicine and whose findings are not supported by the objective medical evidence, clinical and laboratory findings and diagnostic testing, is not binding or conclusive to establish social security disability and may be rejected (SSR 06-03p). In this case, the opinion of Latha Babuli, A.R.N.P., is not supported by the treatment notes which consistently and repeatedly reflect the claimant to have logical thought processes, adequate insight and judgment, intact memory, and appropriate interaction with the examiner. The treatment notes also reflect claimant's ability to control his anger, be cooperative, and engage in conversations with his treatment providers.
>
> . . . .
>
> [T]he medical record outlined above in detail, supports an intelligent individual who attends treatment, is compliant with treatment, who uses tools taught to him during treatment to help his symptom. It supports an individual who may have been violent in the 1990's, but who is more cooperative now and who wants to learn new skills. Claimant has maintained a 10-year marriage and gets along with his wife. His insight, judgment and memory are intact. He willfully has attended numerous doctors' and counseling visits without getting arrested. He is cooperative at his appointments.

(Tr. 28-29). I find that the ALJ has explained the weight given to Nurse Babuji's 'other source' opinion, and that the ALJ's discussion allows the Court to follow the ALJ's reasoning. See Turner, 2008 WL 4489933, at *14. The ALJ's decision to grant Nurse Babuji's opinion some weight (as opposed to no weight as Plaintiff claimed in his memorandum) is supported by substantial evidence. Therefore, I respectfully recommend the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

### 2. Dr. Green

Plaintiff argues that the ALJ erred by rejecting the opinion of non-examining state-agency psychologist, Dr. Pamela Green. (Doc. 16 at 13-14). The Commissioner

- 13 -

contends that the ALJ "appropriately incorporated limitations identified by Dr. Green into the RFC assessment." (Doc. 17 at 13).

Weighing the opinions and findings of treating, examining, and in this case, non-examining physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In Winschel, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  The opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision. See Swindle v. Sullivan, 914 F.2d 222 n.3 (11th Cir. 1990).  "[T]he ALJ must consider non-examining, reviewing State psychologists' opinions and, when the ALJ does not give controlling weight to a treating source, must explain the weight given to the State psychologist's opinions." McCloud v. Barnhart, 166 F. App'x 410, 419 (11th Cir. 2006).

Dr. Green did not examine Plaintiff.  Instead, she reviewed Plaintiff's medical record and completed a mental residual functional capacity assessment.  (Tr. 451-53). As part of her assessment, she determined that Plaintiff would be able to understand and remember simple instructions, but that he was moderately limited in his ability to understand and remember detailed instructions.  (Tr. 451, 453).  She determined that he would be able to complete simple tasks/work procedures and be able to make work

decisions, but would be moderately limited in his ability to maintain attention and concentration for extended periods or to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 451-53). She further determined that Plaintiff is "mentally capable of independently performing basic, routine tasks on a sustained basis" and that he is able to cooperate and be socially appropriate, but that he has moderate difficulty in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 453).

The ALJ considered the reports generated by the state-agency doctors and explained that she afforded them "some weight" because although the opinions were not the fruits of an examination, "they were based on, and are consistent with, the medical record of the claimant" set forth above. (Tr. 29) (internal citation omitted). I find that the ALJ's decision concerning the weight given to the non-examining state agency consultant's opinion is supported by substantial evidence. Therefore, I respectfully recommend the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**; and that the Clerk of Court be directed to **enter judgment** for the Commissioner pursuant to Sentence 4 of § 405(g) and **close** the file.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on May 31, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record